Keating, J.
John Volpe stands convicted by the Criminal Court of the City of New York, Bronx County, of petit larceny. *11 The issue is whether there is sufficient evidence to convict him beyond a reasonable doubt.
The object of the alleged theft was a crane belonging to Collazo and Colon which had been attached to a truck. There is no direct evidence regarding Yolpe’s alleged theft of the crane. The People invoke the principle that recent and exclusive possession of the fruits of a crime without adequate explanation raises a presumption of fact that the possessor is guilty.
Collazo testified that, two weeks after the alleged theft, he saw his crane mounted on a truck which was parked near his garage. The truck, he stated, belonged to the defendant. He was able to identify the crane because of certain welding which he had done on it.
A detective, Hughes, testified that, as a result of the complaint against Volpe, he questioned him about the crane. Volpe stated that he had bought it at an Esso station near Fordham Road. He produced a bill of sale for it. Later, Hughes said, he and Volpe went to the Esso station and an employee said that Volpe had, in fact, purchased a crane there. Subsequently, according to Hughes, Volpe admitted that the crane he purchased at the Esso station was not the crane in question. Hughes testified regarding his conversation in the squad room with Volpe as follows:
“ At that time Mr. Volpe said to me, ‘ All right, now, let me tell you the real story.’ I said,1 All right ’. He said, ‘ I really got the crane from Butchy Pantorre ’, and he said, 11 paid $75.00 for it.’ I said ‘ "Why didn’t you tell me this in the beginning? ’ He said, ‘ Well, I was afraid it wouldn’t look legitimate ’.”
On cross-examination, Hughes admitted that he knew of Butchy Pantorre, that Pantorre’s father had a junk yard, and that Butchy worked for him. He further testified as follows:
“ Q. You never did personally attempt to find this Butchy Pantorre, did you? A. We tried to locate him, we — Mr. Yolpe tried to get an address where he might be located that night but was unsuccessful.
“ Q. Do you know whether the police made an independent attempt to find Mr. Pantorre? A. No.”
Volpe testified on his own behalf that he is an auto mechanic and truck driver. He stated that he bought the crane for $25 at a junk yard in Hunts Point, from Butchy Pantorre. Since *12 he bought it for junk, he did not get a bill of sale for it. The crane was not in working order and he had to do a great deal of work on it before it operated. His friend, Bastogne, was with him when he bought the crane. Bastogne substantially corroborated Volpe’s explanation of how he acquired the crane.
Volpe also testified that he did not intentionally lie to Detective Hughes. He said he was simply confused. A Judge asked the defendant:
“ Well, you knew where you bought the crane, didn’t you? A. I did, sir, but it was two different cranes, I had two cranes in my possession at one time, your Honor, and they are almost exactly the same.”
The rule regarding possession of recently stolen goods without adequate explanation should be applied cautiously. In People v. Richardson (13 N Y 2d 763) we unanimously upheld the Appellate Division’s reversal of such a conviction, on the ground that the possession was not recent enough for the rule to be applicable. The Appellate Division had stated (16 A D 2d 914):
“ It would be expected that if a man stole a woman’s pocketbook in a public place he would dispose of it as soon after the theft as was possible. 1 Decent ’, in a case of this kind, could well be a matter of minutes. ”
What is ‘ ‘ recent ’ ’ in the case of a crane ? This would depend in part upon the circumstances. If, e.g., it were shown that the defendant sold the crane to a junk dealer two weeks after the theft and, in addition, gave a totally inadequate explanation of how he acquired it, the “ recent possession” rule might very well be applicable.
■Since Volpe did not do with the crane what thieves usually do with stolen goods, viz., try to get rid of them as soon as possible, but, instead, mounted it on his truck for all to see and parked the truck cum crane near the crane owner’s garage, his actions with respect to the crane would tend to rebut the presumption based on “ recent possession.”
When this is considered, together with the factor that Volpe’s explanation does not seem inadequate (he even produced corroboration for his story), reliance on the recent and exclusive possession principle to convict him of a crime is improper.
The People have argued that Volpe’s inconsistent explanations under questioning evidence a “consciousness of guilt.” *13 In our view, his explanations were not so clearly inconsistent with innocence. It certainly seems possible that Volpe’s original story to the detective was the result of a misunderstanding. There is no question that Volpe did have two cranes. To draw an inference of guilt from inconsistent explanations, it must be absolutely clear that they are inconsistent. An inference may not be based upon another inference. Moreover, as we stated in People v. Leyra (1 N Y 2d 199, 209): “ Naturally enough, the courts have consistently acknowledged the weakness of this type of evidence, reflecting a consciousness of guilt, where it is not supported by other proof of a truly substantial character. ’ ’
There is no other proof in the case except that the allegedly stolen crane was mounted on Volpe’s truck in full view more than two weeks after the theft. This type of evidence is not, in our opinion, “ proof of a truly substantial character.”
"We do not remand this case for a new trial because we believe that, even if Mr. Pantorre were brought in and testified that he did not sell the crane to Volpe, the sufficiency of the evidence would, nevertheless, be questionable.
The judgment of conviction should be reversed and the indictment dismissed.
Chief Judge Fuld and Judges Vast Voorhis, Burke, Scileppi, Bergan and Breitel concur.
Judgment reversed and indictment dismissed.